**The PEOPLE of the State of Colorado, Complainant,**

v.

**Gerald B. FEATHER, Respondent.**

**No. 06PDJ037.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 6, 2007.

438

On October 30, 2006, a Hearing Board composed of DOUGLAS D. PIERSEL and PAUL J. WILLUMSTAD, both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a hearing pursuant to C.R.C.P. 251.18 in Grand Junction, Colorado. Charles E. Mortimer, Jr. appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). William H. Cain appeared on behalf of Gerald B. Feather ("Respondent") who also appeared. The Hearing Board issues the following "Opinion and Order Pursuant to C.R.C.P. 251.18" based upon the evidence presented by the parties.

## OPINION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19

### I. ISSUE

Colo. RPC 1.5(a) provides that a lawyer's fee shall be reasonable. Respondent and his client entered into a written contingent fee agreement "to collect back child support" in 1990. He thereafter reduced the child support arrearages to judgments and used $4,000.00 from one judgment to purchase an oil/gas royalty for his client in 1993. Respondent then claimed a perpetual one-third interest in the monthly payment from the oil/gas royalty. Is such a fee reasonable?

### II. PROCEDURAL HISTORY AND BACKGROUND

On June 6, 2006, the People filed their complaint in this matter and Respondent filed his answer on June 30, 2006. The complaint contained a single count wherein the People alleged that Respondent violated Colo. RPC 1.5(a) by charging and collecting an unreasonable fee.

The People presented the testimony of Marcy Bennett and Respondent at the hearing. Respondent testified on his own behalf and the parties stipulated that his numerous character witnesses would testify that he has a reputation in the community as an attorney

of good character and that he is a highly respected member of the legal community.

### III. FINDINGS OF MATERIAL FACT

The Hearing Board considered the testimony of each witness and each exhibit admitted into evidence, and finds the following material facts established by clear and convincing evidence.[1]

#### Background

Respondent has taken and subscribed the Oath of Admission, was admitted to the Bar of the State of Colorado on October 2, 1973, and is registered as an attorney upon the official records of the Colorado Supreme Court, Attorney Registration No. 05996. He is therefore subject to the jurisdiction of the Colorado Supreme Court and the Office of the Presiding Disciplinary Judge in these proceedings. Respondent has no prior discipline.

Although licensed to practice law in 1973, Respondent worked for a mining company until 1978. In 1978, he entered private practice and shared office space with a petroleum engineering company. Respondent presently devotes approximately one-third of his practice to each of the following areas: domestic relations, debt collection, and general practice.

#### The Contingent Fee Agreement

Marcy Bennett retained Respondent to collect child support arrearages owed by her ex-husband in 1990. She specifically sought Respondent's counsel because she could not afford to pay an hourly rate and he offered to help her on a contingency basis. The parties therefore entered into a written contingent fee agreement on August 23, 1990. The contingent fee agreement stated that the purpose of the agreement was "to collect back child support." Under the heading "For Office Use Only," someone checked a box for "other arrangements as follows" and wrote "1/3 cont fee from all amounts collected plus costs if any + actual expenses." Ms. Ben-

---

1. The Hearing Board notes that Respondent admitted paragraphs 1–11 of the People's Complaint in his Answer.

nett signed the contingent fee agreement and it represents the only written fee agreement between Respondent and Ms. Bennett concerning any legal matter.[2]

Respondent reduced the child support arrearages owed to Ms. Bennett by her ex-husband to judgment in September 1990 ($12,327.76) and again in August 1992 ($10,534.98).[3] Respondent testified that it was not a difficult task to obtain these judgments and that he did not keep records of his time spent on the case. Ms. Bennett testified that she met with Respondent two to three times and both testified there were no hearings, trials, or negotiations during the course of the representation.

### The Oil/Gas Royalty Interest

During the course of the representation, Ms. Bennett advised Respondent that her ex-husband had transferred or sold most of their assets during the divorce. However, Ms. Bennett knew that he owned an oil/gas royalty that had not been a part of their divorce. Respondent initially garnished these oil/gas royalty payments owed to Ms. Bennett's ex-husband, but later levied upon the interest. A sheriff's sale was held in 1993 and Respondent bid $4,000.00 from one of Ms. Bennett's judgments to purchase the oil/gas royalty. Ms. Bennett inquired of Respondent as to why they could not bid $2.00 and he told her they needed to make a "good faith bid." Respondent testified that he has never been aware of the actual value of Ms. Bennett's oil/gas royalty interest.

On April 19, 1993, Respondent wrote to Amoco Production Company following the sheriff's sale and requested that they direct all royalty payments to his client in care of his office. The letter does not indicate that it was copied to Ms. Bennett. Thereafter, Respondent received all payments on the oil/gas royalty. He retained one-third of all payments received and paid the balance to Ms. Bennett who never saw an original check.

In March 2000, Ms. Bennett wrote to Respondent and asked if he would be receiving one-third of the oil/gas royalty payments for-

ever. Respondent mailed a response stating, "In essence, yes." In that letter, Respondent proposed that Ms. Bennett simply assign him one-third of her interest.

In March 2005, Respondent wrote to Ms. Bennett and stated that he had prepared an assignment for his one-third share of the oil/gas royalty. Respondent then wrote: "When I get it all set up this way, I'll send you some things from my file that you requested."

In July 2005, Ms. Bennett wrote Respondent and requested her file. On August 11, 2005, Respondent responded and indicated that he was concerned that Ms. Bennett now wished to dishonor her agreement with him. The People intervened on behalf of Ms. Bennett in August 2005. In September 2005, Ms. Bennett wrote the oil/gas company and directed them to send the oil/gas royalty to her; they did so. Respondent returned her file in October 2005.

As of August 2005, $35,095.14 had been paid pursuant to the oil/gas royalty and Respondent had received $11,675.42 from the same. The periodic payments made to Respondent from the oil/gas royalty do not reduce the amount of child support arrearages owed by Ms. Bennett's ex-husband.

Ms. Bennett testified that she originally believed and still believes "all amounts collected" as that term was used in the fee agreement meant Respondent would receive one-third of what he actually collected from the child support arrearages, in this case one-third of $4,000.00, and that he would stop taking one-third of the oil/gas royalty when his bill had been paid in full. However, she also testified that one-third of the total judgments "seems fair to me" and that she would leave it to the Hearing Board to decide whether or not she should receive money back from Respondent.

With regard to obtaining the oil/gas royalty interest, Respondent testified that he traveled to Durango for title work, levy and seizure research, and the sheriff's sale. He also spent office time receiving and distribut-

---

**2.** See Exhibit A to the People's Complaint filed June 6, 2006.

**3.** See Exhibits B and C.

ing the oil/gas royalty payments for thirteen years and estimates that all of his efforts, at his original rate of $125.00 per hour, are worth eight to ten thousand dollars.

## IV. CONCLUSIONS OF LAW

■ The People argued that Respondent violated Colo. RPC 1.5(a) because the plain language of the contingent fee agreement does not entitle Respondent to a one-third interest in the oil/gas royalty. They also argued it violates the reasonableness standards articulated by the Colorado Supreme Court in *People v. Nutt*, 696 P.2d 242 (Colo. 1984).

Respondent claims that the plain language of the contingency fee agreement covers "all amounts collected" and is not limited to the recovery of child support arrearages. Hence, Respondent argues that he is entitled to one-third of the oil-gas royalty in perpetuity and that such a fee is reasonable. He also claims that the *Nutt* case is inapplicable to the present case in light of the work he completed on behalf of his Ms. Bennett and the risk he took to obtain a good result for her.

The Hearing Board finds that the People proved Count I by clear and convincing evidence. Colo. RPC 1.5(a) provides that a lawyer's fee shall be reasonable. The Hearing Board concludes that Respondent charged an unreasonable fee to Ms. Bennett.

Ms. Bennett retained Respondent to collect a definable and calculable amount of child support arrearages. The plain language of the contingent fee agreement is silent as to the specific consideration of an oil/gas royalty. Respondent actually collected $4,000.00 of the total judgments for Ms. Bennett, but still claims a perpetual interest in an asset *she* purchased with a portion of *her* judgments. The Hearing Board finds no evidence of a subsequent modification or novation of the original contingent fee agreement.[4] Therefore, the Hearing Board agrees that the receipt of over $11,000.00, plus future royalty payments in perpetuity, is un-

reasonable under the contingent fee agreement. However, the Hearing Board notes that the evidence also suggests that Ms. Bennett allowed Respondent to take one-third of the oil/gas royalty payments for over ten years without protest.

Nevertheless, the Colorado Supreme Court clearly stated in *Nutt* that a fee arrangement directly related only to oil/gas royalties an attorney's client might receive constitutes an unreasonable fee because it is not indicative of the time, labor, and skill invested by the attorney. *Nutt*, 696 P.2d at 248. Therefore, the Hearing Board also finds that if the contingent fee agreement had entitled Respondent to a one-third interest in the oil/gas royalty, it would have violated *Nutt* because Respondent's compensation ultimately would have been related to the royalties his client might receive from an oil/gas interest and not the value of his services as an attorney.

## V. SANCTIONS

At the conclusion of the evidence, the People argued that Respondent violated Colo. RPC 1.5(a) but requested that the Hearing Board place Respondent in a diversion program pursuant to C.R.C.P. 251.13 in lieu of a sanction. Respondent advised the Hearing Board through counsel that he would accept a diversion agreement in lieu of a sanction if the Hearing Board found a rule violation. The Hearing Board issued an opinion pursuant to C.R.C.P. 251.19(b)(3) and offered Respondent the opportunity to enter a diversion program on January 31, 2007. Respondent rejected the diversion agreement by a letter dated February 8, 2007.[5] Therefore, the Hearing Board must determine the appropriate sanction for Respondent's misconduct.

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. *In re Roose*, 69 P.3d 43, 46–47 (Colo.2003). In imposing a sanction after a finding of lawyer misconduct,

---

4. *See generally* Chapter 23.3, Rules Governing Contingent Fees, Rule 4, amended and effective January 31, 1992.

5. Counsel for Respondent moved to withdraw on February 21, 2007.

the Hearing Board must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

The Hearing Board finds Respondent violated duties owed to his clients and the legal system. Respondent specifically violated his duty to charge his client a reasonable fee for the services he provided to her. The evidence established that Respondent *negligently* engaged in this conduct and caused actual and potential harm to his client and the legal system.[6] "Attorney misconduct perpetuates the public's misperception of the legal profession and breaches the public and professional trust." *In re DeRose,* 55 P.3d 126, 131 (Colo. 2002) (paraphrasing *In re Pautler,* 47 P.3d 1175, 1178 (Colo.2002)).

The Hearing Board finds clear and convincing evidence of the following aggravating factors: refusal to acknowledge wrongful nature of conduct and substantial experience in the practice of law. *See* ABA *Standards* 9.22(g) and (i). The Hearing Board also finds clear and convincing evidence of the following mitigating factors: no prior disciplinary record and full and free disclosure in these proceedings. *See* ABA *Standards* 9.32(a) and (e). The parties also stipulated that Respondent has a reputation in the community as an attorney of good character and that he is a highly respected member of the legal profession. *See* ABA *Standard* 9.32(g).

The ABA *Standards* suggest that the presumptive sanction for the misconduct and rule violation established in this case ranges from private admonition to public censure. Public censure is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system. ABA *Standard* 7.3. But private admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the lawyer's conduct violates a duty owed to the profession, and causes little or no actual or potential injury

to a client, the public, or the legal system. ABA *Standard* 7.4.

■ The commentary to ABA *Standard* 7.3 indicates that "[c]ourts typically impose reprimands when lawyers engage in a single instance of charging an excessive or improper fee." *See also In re Wimmershoff,* 3 P.3d 417, 421 (Colo.2000) (violation of Colo. RPC 1.5(a) implicates ABA *Standard* 7.0). The Colorado Supreme Court suspended *Nutt* from the practice of law for a period of six months, but he had been previously disciplined for conduct involving an attempt to collect a clearly excessive fee. *Nutt,* 696 P.2d at 249. This case involves only the one instance of charging an improper fee. Weighing the aggravating and mitigating factors together with the seriousness of the misconduct, the Hearing Board concludes that a public censure is the appropriate sanction in this case.

## VI. CONCLUSION

Respondent has no prior discipline in over thirty-three years as a licensed attorney in the State of Colorado. Although the Hearing Board finds Respondent charged an unreasonable fee, none of the evidence suggests that he was motivated by malice, selfishness, or dishonesty. Respondent provided a remedy for his client that was otherwise unavailable, but the fee agreement, as Respondent interprets it, is unreasonable.

Further, this case presents the Hearing Board with a unique issue where although the Hearing Board finds misconduct, public censure is an appropriate sanction. *See generally In re Sather,* 3 P.3d 403, 415 (2000) ("Because we have not previously made clear an attorney's obligation to deposit all forms of advance fees into trust accounts or explained the prohibition against "non-refundable" fees, we do not sanction Sather for violating these rules."). In light of the fact that Respondent acted negligently, and that his conduct involved only one client, the Hearing Board concludes that a public censure is appropriate in this case.

---

6. "Negligence is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA *Standards* (Definitions).

## VII.  *ORDER*

The Hearing Board therefore **ORDERS:**

1.  GERALD  B.  FEATHER,  Attorney Registration No. 05996, is hereby **PUBLICLY CENSURED.**

2.  GERALD B. FEATHER **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days from the date of this Order.  Respondent shall have ten (10)  days  thereafter  to  submit  a  response.

